

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

January 4, 2021

Jim Wyda, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

    Re:   *United States v. William Tyler Beck,*
          Criminal No. SAG-19-0550

Dear Mr. Wyda:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, William Tyler Beck (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, January 8, 2021, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

    1.    The Defendant agrees to plead guilty to Count Two of the Indictment now pending against him, charging him with Coercion and Enticement, in violation of 18 U.S.C. § 2422(b). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of Count Two to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      That on or about the dates specified in Count Two of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

        a.    Knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

   b.  The defendant believed that such individual was less than eighteen (18) years of age; and

   c.  That the Defendant could have been charged with a criminal offense for engaging in the specified sexual activity (including production and attempted production of child pornography as charged in Count One of the pending indictment).

## Penalties

  3.  The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 2 | 18 U.S.C. § 2422(b) | 10 years | Life | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

   a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

Rev. August 2018

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

   g. Additional Special Assessment: The Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

### Sex Offender Registration

  4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

  5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Defendant's Consent to Proceed via Video-Teleconference

  6. This Office and the Defendant agree, pursuant to the Coronavirus Aid, Relief, and Economic Recovery Act, H.R. 748 (the CARES Act), enacted on March 27, 2020, that certain federal court proceedings are permitted to proceed telephonically, or via video-teleconference. The parties further agree that Section 15002(b) of the CARES Act permits the District Court to conduct certain hearings in felony matters remotely. Further, pursuant the District of Maryland's Standing Order 2020-06, dated March 29, 2020, District Court Judges are permitted to conduct Rule 11 plea hearings and sentencing hearings in felony cases remotely.

  7. The Defendant consents, after fully consulting with undersigned defense counsel, to proceed with the Rule 11 plea hearing and the sentencing hearing telephonically, or via video-teleconference, in this matter. Because an in-person / in-court proceeding in this matter cannot

occur without seriously jeopardy to public health and safety, and because delay in this case will result in serious harm to the interests of justice, the Defendant specifically requests to proceed remotely. The Defendant agrees to proceed remotely, and knowingly and expressly waives any and all rights to a personal appearance in court in this matter.

### Advisory Sentencing Guidelines Apply

8.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

9.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

a.      A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those to which the defendant has agreed to plead guilty. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

### Group 1: Coercion and Enticement Sexual Exploitation of Jane Doe 1(Counts 1 & 2):

### Coercion and Enticement of Jane Doe 1(Count 1):

b.      Pursuant to U.S.S.G. § 2G2.1(a), the base offense level for coercion and enticement of a minor is 28.

c.      Pursuant to U.S.S.G. § 2G1.3(b)(2)(A), there is a two (2) level increase because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct. [Subtotal: 30].

d.      Pursuant to U.S.S.G. § 2G1.3(b)(3)B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce or facilitate the travel of, the minor to engage in prohibited sexual conduct. [Subtotal: 32].

e.      Pursuant to U.S.S.G. § 2G1.3(b)(4)(A), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact. [Subtotal: 34].

f.      Pursuant to U.S.S.G. § 2G2.3(c)(1), the guideline for production of child pornography is applied because the offense involved causing a minor to engage in sexually explicit

conduct for the purpose of producing a visual depiction of such conduct, and the resulting offense level under § 2G2.1 is greater than 34.

Sexual Exploitation of Jane Doe 1(Count 1):

  g. The base offense level for sexual exploitation of a minor is 32, pursuant to U.S.S.G. § 2G2.1(a).

  h. Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. [Subtotal: 36].

  i. Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

  j. Pursuant to U.S.S.G. §2G2.1(b)(6), there is a 2-level increase because the offense involved the knowing misrepresentation of a participant's identity and the use of a computer or interactive device to persuade, induce, entice, coerce, or facilitate a minor to engage in sexually explicit conduct. [Subtotal: 40.]

  k. Accordingly, the offense level for Group One is 40.

Groups 2 through 6: Sexual Exploitation of Additional Minors (Relevant Conduct):

  l. Each instant of sexual exploitation of a minor counts as a separate group under U.S.S.G. §§ 1B1.1, 3D1.2(d). There were at least five separate instances of sexual exploitation of a minor.

  m. The base offense level for sexual exploitation of a minor is 32, pursuant to U.S.S.G. § 2G2.1(a).

  n. Pursuant to U.S.S.G. § 2G2.1(b)(1)(A), there is a two (2) level increase because the victims were under the age of 16 at the time of the offense. [Subtotal: 34].

  o. Pursuant to U.S.S.G. §2G2.1(b)(6), there is a 2-level increase because the offense involved the knowing misrepresentation of a participant's identity and the use of a computer or interactive device to persuade, induce, entice, coerce, or facilitate a minor to engage in sexually explicit conduct. [Subtotal: 36].

  p. Accordingly, the offense level for Groups 2 through 6 is 36.

Grouping:

  q. Count as one unit the group with the highest offense level (Group One) which is offense level 40. U.S.S.G. § 3D1.4(a).

r. Count as one unit each group that is equally serious or 1 to 4 levels less serious than Group One. U.S.S.G. § 3D1.4(b). Each of instances of sexual exploitation of a minor counts as one unit and the total is 5 units.

s. Accordingly, there are 6 units applicable and a 5 level increase to Group One for an adjusted offense level of 45.

Acceptance of Responsibility:

t. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Subtotal: 42).

Chapter Four Enhancement:

10. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Total 47).

11. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

12. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Agreed Conditions of Supervised Release

13. The parties stipulate and agree to the following conditions of supervised release:

a. You must not have direct contact with any child you know or reasonably should know to be under the age of 18 without the permission of the probation officer. If you do

have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

        b.      You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

        c.      To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

        d.      You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

## Obligations of the Parties

14. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

15. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

16. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground

8

that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

        b.        The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Forfeiture</u>

18.    a.        The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

        b.        Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

        i.        The following item originally seized by law enforcement authorities from the Defendant's residence on August 22, 2018:  Apple iPhone 5S, model: A1453, s/n: DNPMT7BGFF9Y.

        c.        The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

        d.        The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

19.    The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

20.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement

will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

22. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

23. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

*[signature]*

Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_7/16/21_  
Date

_William Tyler Beck_  
William Tyler Beck

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_7/16/21_  
Date

_Jim Wyda, Esq._  
Jim Wyda, Esq.

12

Rev. August 2018

# ATTACHMENT A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

William Tyler Beck ("Beck") is 29 years old, and is a resident of Centreville, Maryland. Between 2014 and August 2018, Beck used internet-based communication services Live.me and Snapchat to coerce at least six minor females, one as young as 9, into creating and sending him sexually explicit images and videos of themselves. As part of his scheme to exploit the minors, Beck created fictitious accounts and represented himself as 16 years old.

### Beck's Exploitation of Jane Doe 1 Counts 1 & 2:

On March 5, 2017, Beck, then age 26, used a cell phone and the video streaming & chat application Liveme.com to communicate with Jane Doe 1, a 9 year old girl in Kentucky. Beck told Jane Doe 1 to live stream video of herself, and to expose her breasts and genitalia. Beck also told Jane Doe 1 to insert her fingers into her vagina during the live stream. Jane Doe 1 reported that Beck told her he would call the police and she would get in trouble if she did not do as Beck told her. Afraid she would get in trouble, Jane Doe 1 complied with Beck's demands, and live streamed a video of her exposed breasts and genitalia, and of her finger penetrating her vagina. The video was broadcast on an open stream, and viewed by over 100 other Live.me users, some who immediately reported the conduct to law enforcement. During Beck's enticement of Jane Doe 1, Jane Doe 1 was "banned" from the site, and when she got back on, Beck instructed her to change her user name to "Lil sexy Chica". The streamed video was 6 minutes and 27 seconds in duration, was maintained by Live.me, and is described as follows:

- The video initially depicts Jane Doe 1's face from the nose up. Later in the video, the video depicts Jane Doe 1, naked, and is focused on her anus and genitalia. Jane Doe 1 then lies down on a bed and focuses the camera on her genitalia as she begins to manipulate and digitally penetrate her vagina using the fingers on her left hand. Jane Doe 1 also exposes her breasts to the camera and uses her hands to fondle her breasts. Towards the end of the video, Jane Doe 1's full face is depicted in the video.

During his interaction with Jane Doe 1, Beck also live streamed video of himself, with his penis exposed, masturbating.

### Beck's Sexual Exploitation of Additional Minors:

From approximately 2014 through approximately August 2017, Beck used the applications Kik and Live.me to communicate with minor females who identified themselves as ages 12 to 16, and one who identified herself as 9 (in addition to Jane Doe 1). Beck communicated with more than 24 self-identifying minors during that time, and all of the communications related to sex

1

and/or requests for photos. During most of these communications, Beck falsely identified his age, typically as 16, but occasionally as 13.

During at least three of the communications, in an attempt to obtain pictures and videos from the minors, Beck threatened to expose the victims in some way, including: threatening to post pictures, stating that he already posted pictures, and threatening to tell victims' parents that they were using the Live.me application.

Beck admits that he caused, or attempted to cause, at least 5 of these minor females, between the ages of 13 and 16, to produce, images, videos, or to live stream videos, of their exposed genitalia.

Search Warrant Execution and Beck's Confession:

On August 22, 2018, investigators executed the search warrant for Beck's residence, 614 Murphy Road, Centreville, Maryland 21617. During the execution of the search warrant, agents seized Beck's iPhone, an Apple iPhone 5S, model: A1453, s/n: DNPMT7BGFF9Y.

The Beck's iPhone was forensically examined. Investigators found the Live.me application, and observed that Beck was actively communicating on the application with multiple minor females, ages approximately 13 to 16 years old. The iPhone's photo gallery included hundreds images of females exposing their genitalia.

On August 22, 2018, Beck voluntarily spoke to investigators and provided the following information:

- Beck used the Live.me application to communicate with minors;
- Beck stated that he did not recall communicating with a 9 year old (Jane Doe 1), but he identified himself in a screenshot of the livestream with Jane Doe 1, and he identified the background as the basement of his parents' residence in Rock Hall, Maryland;
- Beck posed as a 16-year-old male on Live.me because it was easier to get photos from minor girls; and
- Beck admitted to having a sexual interest in children.

The iPhone used by Beck to communicate with Jane Doe 1 on March 5, 2017 was made outside of Maryland.

Beck admits that he used a facility and means of interstate commerce (a mobile phone and the internet), to persuade, induce, entice and coerce Jane Doe 1, a 9 year old female, to engage in sexual activity, and that he could have been charged with a criminal offense for engaging in the sexual activity, (including production and attempted production of child pornography as charged in Count One of the pending indictment).

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
William Tyler Beck

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Jim Wyda, Esq.
Counsel for Defendant

3